[Cite as *State v. Wears*, 2023-Ohio-4363.]


IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
UNION COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    v.

DONALD LEE WEARS,

    DEFENDANT-APPELLANT.

CASE NO. 14-22-27


**O P I N I O N**


Appeal from Union County Common Pleas Court
Trial Court No. 22-CR-0067

**Judgment Affirmed**

**Date of Decision:  December 4, 2023**


APPEARANCES:

    *Kerry M. Donahue* **for Appellant**

    *Raymond Kelly Hamilton* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Donald L. Wears ("Wears") appeals the judgment of the Union County Court of Common Pleas, raising ten assignments of error that challenge his conviction for domestic violence. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On February 27, 2022, Officers Jason Rowe ("Officer Rowe"), Brittany Miller ("Officer Miller"), and Alec Posterli ("Officer Posterli") of the Marysville Police Department responded to a 9-1-1 call in which December Miller Palms ("December") reported a domestic incident. December indicated that she had seen Wears choke and punch her friend, Shelly Farris ("Farris"). When the police arrived at the scene, Farris and Wears were located inside the house while December was outside in the yard. December informed the police that Wears was the primary aggressor.

{¶3} The police then made contact with Wears and Farris inside the house. Wears was removed from the residence and taken to a police cruiser. Officer Miller testified that Farris was reluctant to speak with the police and initially reported "that nothing happened." (Oct. 17 Tr. 93). However, Officer Miller testified that, after being told that December had given the police an account of the incident, Farris indicated that Wears had hit and choked her. The police observed red bruising

around Farris's neck. Officer Rowe testified that these red marks appeared in the shape of thumbprints. He further stated that these marks were consistent Farris having been grabbed by the throat.

{¶4} While speaking with the police in the cruiser, Wears indicated that Farris had been living with him for roughly three weeks. Wears also indicated that he had short-term and long-term memory issues as the result of drug and alcohol abuse. Based on the red marks on Farris's neck, her description of the incident, and December's description of the incident, the officers determined that Wears was the primary aggressor and placed him under arrest.

{¶5} On March 11, 2022, Wears was indicted on one count of domestic violence in violation of R.C. 2919.25(A), a fourth-degree felony. A jury trial was held on October 17 and 18, 2022. Both December and Farris testified as witnesses in addition to Officers Miller, Posterli, and Rowe. The Defense argued that no physical harm occurred in this case and maintained that Wears did not punch Farris or grab her throat. On October 18, 2022, the jury returned a verdict of guilty on the charge against Wears. The trial court issued its judgment entry of sentencing on November 21, 2022.

{¶6} Wears filed his notice of appeal on December 1, 2022. On appeal, he raises the following ten assignments of error:

**First Assignment of Error**

**The verdict was against the manifest weight of the evidence.**

**Second Assignment of Error**

**The Court's decision was against the substantial weight of the evidence.**

**Third Assignment of Error**

**It was plain error for the Court not to instruct the jury on self-defense and/or accident.**

**Fourth Assignment of Error**

**It was plain error to allow evidence of a prior misdemeanor domestic violence conviction to be introduced to the jury.**

**Fifth Assignment of Error**

**There was ineffective assistance of counsel that changed objectionable errors to plain errors and other deficient representation.**

**Sixth Assignment of Error**

**The curative instruction was improper as it should not have been made and further cross should have been ordered.**

**Seventh Assignment of Error**

**It was improper for the prosecutor to refuse to allow defense counsel to use tax-payer paid for court room technology to be used by defense counsel in his cross examination which was a denial of due process.**

**Eighth Assignment of Error**

**Throughout this case the State of Ohio improperly, knowing it was improper, used body cam evidence to the extent that appellant was denied due process of law.**

**Ninth Assignment of Error**

**The State of Ohio violated *U.S. v. Brady* by withholding exculpatory evidence which would have been beneficial to counsel during cross of the alleged victim if it had been disclosed.**

**Tenth Assignment of Error**

**The above three errors (VII, VIII, IX) combined constitute prosecutor misconduct.**

For the sake of analytical clarity, we will consider the assignments of error in the following order: second, first, third, fifth, fourth, sixth, seventh, eighth, ninth, tenth.

*Second Assignment of Error*

{¶7} Wears argues that his conviction for domestic violence was not supported by sufficient evidence.

Legal Standard

{¶8} A sufficiency-of-the-evidence "analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12. "An appellate court is not to examine whether the evidence presented should be believed but should rather 'examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Johnston*, 3d Dist. Logan No. 8-13-10, 2014-Ohio-353, ¶ 10, quoting *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds, State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997). On appeal, the applicable standard

> is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 27, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 62 (3d Dist.).

**{¶9}** To establish a conviction for domestic violence in violation of R.C. 2919.25(A), the State must prove that the defendant "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." R.C. 2919.25(A). If the State establishes that "the offender previously has pleaded guilty to or been convicted of domestic violence * * * a violation of [R.C. 2919.25](A) * * * is a felony of the fourth degree * * *." R.C. 2919.25(D)(3).

Legal Analysis

**{¶10}** At trial, December testified that she had been staying with Farris and Wears for several days. She stated that, on the night of the incident, Farris had been arguing with Wears. However, December indicated that Wears was the aggressor

in the physical altercation that ensued. She testified that Wears grabbed Farris "by the throat three times." (Oct. 17 Tr. 37). December stated that she got in between Wears and Farris at one point to keep Wears away from Farris.

**{¶11}** December testified that Wears told her that she could not stay at the house that night. She stated that she went upstairs to gather her possessions and that, when she returned to the first floor, Wears had Farris "by the throat, again." (Oct. 17 Tr. 37). December then brought her belongings to her car outside. She testified that, when she turned back to the house, she saw that Wears was grabbing Farris "by the throat with one hand and he punched her in the face with the other." *Id*. at 38. December then called the police.

**{¶12}** Officer Rowe testified that he observed red marks around Farris's neck that were roughly the size of thumbprints and were consistent with having been choked or grabbed around the throat. Pictures of Farris's neck that were taken on the night of the incident were introduced at trial. Officer Miller testified that Wears informed the police that Farris had been living at the house with him. December testified that Farris was Wears's girlfriend at that time. Finally, the State produced a certified record of a prior conviction that Wears had received for domestic violence.

**{¶13}** While the prosecution presented additional testimony to support this conviction at trial, a reasonable trier of fact could conclude from the evidence reviewed herein that the State produced some evidence to substantiate each of the

essential elements of the offense of domestic violence. Since the State produced evidence that was sufficient to support Wears's conviction for domestic violence as a fourth-degree felony, his second assignment of error is overruled.

*First Assignment of Error*

{¶14} Wears argues that his conviction for domestic violence was against the manifest weight of the evidence.

Legal Standard

{¶15} In contrast to a "review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *Plott, supra*, at ¶ 73. Thus, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). On appeal, courts

> must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387 * * *.

*State v. Schatzinger*, 3d Dist. Wyandot No. 16-20-04, 2021-Ohio-167, ¶ 52. "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,'

should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

**{¶16}** At trial, Farris testified that she "probably" began the argument but was not the first person to get physical in this altercation. (Oct. 17 Tr. 188). She admitted that she could not remember much of what happened because she had been drinking. She stated that she kicked at Wears during the altercation but only to defend herself. On cross-examination, Farris stated that, once the altercation began, she grabbed at him as much as he grabbed at her.

**{¶17}** Officer Miller testified that Farris initially informed the police that nothing had happened. Officer Miller stated that, after being told that December had given an account of the incident, Farris eventually indicated that Wears had punched and choked her. However, at trial, Farris stated that Wears had "probably" attempted to punch her. (Oct. 17 Tr. 186). But December maintained that Wears had punched Farris in the face at trial.

**{¶18}** Based on Farris's statements on the night of the incident, Officer Rowe concluded that Wears had swung at Farris but failed to make contact with her face. He was not aware that Farris later reported that Wears had punched her in the face. He stated that he did not observe any indication from Farris's appearance that she had been punched. Officer Rowe also testified that Farris and December gave

generally consistent statements. He testified that Farris and Wears appeared to be at least slightly intoxicated that night while December did not appear to be intoxicated.

{¶19} On cross-examination, December indicated that Farris's hands were on Wears because she was trying to get Wears off of her and that Farris could not completely reach Wears while he was choking her because Farris's arms were not long enough. On redirect, December maintained that Farris was defending herself when she made contact with Wears. December also admitted to reporting Wears shortly after he kicked her out of the house.

{¶20} Officer Miller also testified that Wears had reported that Farris "came at" him and that he only "put an arm up" to stop her in response. (Oct. 17 Tr. 95). She stated that Wears told the police that they should be able to see marks on his neck that were the result of the altercation. However, Officer Miller stated that she was not able to discern any marks on his neck. At the holding facility, Wears maintained that he did not lay a hand on Farris. Officer Rowe testified that Wears never admitted to grabbing Farris by the throat.

{¶21} At trial, the Defense's primary argument was that Wears did not cause any physical harm to Farris in this case. Defense counsel argued that the trial testimony established Farris had not, in fact, been punched in the face. He pointed out that Farris did not have any bruises or lacerations on her face. Defense counsel then suggested that no red marks were visible on Farris's neck in the pictures

introduced at trial and that the claims of Wears choking Farris were, therefore, unsupported by physical evidence.

**{¶22}** However, Officer Miller testified that the red marks were much more visible in person than in the pictures. Officers Rowe and Posterli also testified to seeing the red marks on Farris's neck on the night of the incident. The Defense also called Wears's brother, Ronald Wears, as a witness. He testified that he saw Farris kicking and pushing Wears on the date of the incident but also admitted that he had left some time before December had called 9-1-1.

**{¶23}** Having reviewed the evidence on the basis of its weight and credibility, we do not conclude that the jury lost its way and committed a manifest miscarriage of justice by finding Wears guilty in this case. Accordingly, Wears's first assignment of error is overruled.

*Third Assignment of Error*

**{¶24}** Wears argues that the trial court's failure to give a jury instruction on self-defense and accident constituted plain error.

Legal Standard

**{¶25}** "Jury instructions are critically important to assist juries in determining the interplay between the facts of the case before it and the applicable law." *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5.

> 'Requested jury instructions should ordinarily be given if they are correct statements of law, if they are applicable to the facts in the case, and if reasonable minds might reach the conclusion sought by the

requested instruction.' *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127[, ¶ 240]. Yet, a trial court may refuse to issue a requested jury instruction if 'the evidence adduced at trial is legally insufficient' to support it.' *State v. Juntunen*, 10th Dist. Franklin Nos. 09AP-1108 and * * * 09AP-1109, 2010-Ohio-5625, ¶ 13, quoting *State v. Barnd*, 85 Ohio App.3d 254, 259, 619 N.E.2d 518 (3d Dist. 1993).

*State v. Cervantes*, 3d Dist. Henry No. 7-21-06, 2022-Ohio-2536, ¶ 35. "Thus, a trial court need not provide a requested jury instruction unless it finds that sufficient evidence was presented at trial to support giving the instruction." *State v. Stoychoff*, 3d Dist. Hancock Nos. 5-21-18, 5-21-19, 2021-Ohio-4248, ¶ 9.

{¶26} An appellate court will generally review a trial court's refusal to give a requested jury instruction under an abuse of discretion standard. *State v. Thompson*, 2017-Ohio-792, 85 N.E.3d 1108, ¶ 11 (3d Dist.). However, the failure to request a specific jury instruction at trial waives all but plain error on appeal. *State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220, ¶ 69 (3d Dist.). Under Crim.R. 52(A), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

> For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. * * * Under the plain error standard, the appellant must demonstrate that there is a reasonable probability that, but for the trial court's error, the outcome of the proceeding would have been otherwise.

(Citations omitted). *State v. Bradshaw*, 2023-Ohio-1244, 213 N.E.3d 117, ¶ 21 (3d Dist.). Plain error is recognized "with the utmost caution, under exceptional

-12-

circumstances and only to prevent a manifest miscarriage of justice." *Id.*, quoting

*State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the

syllabus. Finally, "the *defendant* bears the burden of demonstrating that a plain

error affected his substantial rights." (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d

118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14.

Legal Analysis

**{¶27}** As no jury instructions for accident or self-defense were requested at

trial, Wears concedes that the plain error standard of review applies herein. We

begin by examining whether it was plain error not to give an instruction on accident.

> Accident is not an affirmative defense. * * * Rather, the defense of
> accident is tantamount to a denial that an unlawful act was committed;
> it is not a justification for the defendant's admitted conduct. * * *
> Accident is defined as an unfortunate event occurring casually or by
> chance. * * * Accident is an argument that supports a conclusion that
> the state has failed to prove the intent element of the crime beyond a
> reasonable doubt.

(Citations omitted.) *State v. Atterberry*, 119 Ohio App.3d 443, 447, 695 N.E.2d 789

(8th Dist. 1997). Further, we also note that

> [a]ccident and self-defense are generally 'inconsistent by definition,'
> as self-defense presumes intentional, willful use of force to repel force
> or escape force, while accident is 'exactly the contrary, wholly
> unintentional and unwillful.'

*State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 59, quoting

*Barnd*, *supra*, at 260.

{¶28} On appeal, Wears has not directed our attention to any evidence in the record that would support an instruction on accident. At trial, the Defense argued that Wears did not cause any physical harm to Farris intentionally or unintentionally. Further, the State presented evidence that Wears had pulled Farris around by her ponytail and repeatedly grabbed her by the throat. December stated that she told Wears to stop but that he continued to grab Farris by the throat. Thus, the evidence and arguments presented at trial do not support an instruction for accident. Thus, his first argument is without merit.

{¶29} We turn now to examining whether it was plain error not to give a self-defense instruction in this case. As noted previously, the Defense's primary argument was that Wears did not cause any physical harm to Farris. At the temporary holding facility, Wears denied ever choking and punching Farris. Thus, the evidence presented by the Defense was not calculated to establish that Wears justifiably used force against Farris. Rather, the Defense sought to establish that Wears did not use any force against Farris that caused physical harm.

{¶30} Further, even if sufficient evidence was presented at trial to support an instruction on self-defense, we do not conclude that there is a reasonable probability that the outcome of this proceeding would have been different had the trial court given an instruction on self-defense. Farris testified at trial, and the substance of her allegations was corroborated by another witness to the incident. The State also introduced pictures of red marks that the police observed on Farris's

neck on the night of the incident. Officer Rowe testified that these red marks appeared to be consistent with Farris having been grabbed by the throat. In the face of this evidence, Wears has not raised an argument that establishes plain error. Thus, his second argument is without merit. His third assignment of error is overruled.

*Fifth Assignment of Error*

**{¶31}** Wears argues that several of his attorney's decisions denied him his right to the effective assistance of counsel.

Legal Standard

**{¶32}** "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, ¶ 24, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, the appellant must demonstrate that trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 35, quoting *Strickland* at 687. "[D]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101. Further,

'Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance.' *State v. Harrison*, 2015-Ohio-1419, 31 N.E.3d 220, ¶ 75 (3d Dist.). '[T]rial counsel's failure to object is generally viewed as trial strategy and does not establish ineffective assistance.' *State v. Turks*, 3d Dist. Allen No. 1-08-44, 2009-Ohio-1837, ¶ 43.

*State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 58. A trial attorney is not required to "raise meritless issues or even all arguably meritorious issues." *State v. Mayse*, 88 N.E.3d 1208, 2017-Ohio-1483, ¶ 24 (3d Dist.).

**{¶33}** "In order to establish prejudice, 'the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" *State v. Berry*, 3d Dist. Union No. 14-20-05, 2021-Ohio-1132, ¶ 122, quoting *State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343, ¶ 13 (3d Dist.). "If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test." *State v. Gear*, 3d Dist. Van Wert No. 15-22-03, 2023-Ohio-1246, ¶ 50.

Legal Analysis

**{¶34}** Wears raises three main arguments under this assignment of error. First, he asserts that his trial counsel was ineffective for failing to stipulate to his prior domestic violence conviction. At trial, the State had to prove that he had a prior conviction for domestic violence to establish that Wears committed the offense of domestic violence as a felony of the fourth degree. In such a situation, the decision to stipulate to a prior conviction is generally a matter of trial strategy. *State*

*v. Huddleston*, 3d Dist. Logan No. 8-17-21, 2018-Ohio-1114, ¶ 9. Further, the "failure to stipulate to [a] prior domestic violence conviction[] does not establish prejudice since, if the defendant had stipulated, the jury still would have learned about the fact that he had [a] prior domestic-violence conviction[]." *State v. Zachery*, 11th Dist. Trumbull No. 2019-T-0082, 2021-Ohio-2176, ¶ 58. On appeal, Wears has not demonstrated that the decision not to enter a stipulation denied him his right to the effective assistance of counsel. Thus, his first argument is without merit.

{¶35} Second, Wears argues that his trial counsel was ineffective for failing to request instructions for accident or self-defense. As noted previously, the Defense argued that Wears did not cause any physical harm to Farris intentionally or unintentionally. This argument was consistent with Wears's contention that he did not choke or punch Farris during the incident. The decision not to request these instructions was a matter of trial strategy as self-defense and accident are generally inconsistent with the Defense's primary argument. Further, under the third assignment of error, we concluded that the evidence produced at trial did not support an instruction on accident. We also concluded that no reasonable probability existed that the outcome of the trial would have been different if the trial court had given a self-defense instruction. For these reasons, his second argument is without merit.

{¶36} Third, Wears asserts that defense counsel was ineffective for failing to object to leading questions, hearsay statements, questions without foundation,

and testimony about other acts. However, in his brief, he does not direct us to these instances in which defense counsel's failure to object purportedly constituted deficient performance or raise any arguments to establish that these unidentified failures to object were prejudicial. In the absence of such arguments, the decision not to object is a matter of trial strategy and cannot establish deficient performance. *Turks*, *supra*, at ¶ 43. Thus, his third argument is without merit. Since Wears has not carried the burden of establishing an ineffective assistance of counsel claim, his fifth assignment of error is overruled.

### *Fourth Assignment of Error*

**{¶37}** Wears argues that the presence of testimony at trial about his prior conviction for domestic violence constituted plain error.

### Legal Standard

**{¶38}** "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 36. However, evidence of a defendant's other acts may be admissible for other permissible purposes. *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72. Under Evid.R. 404(B)(2), such permissible purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2).

**{¶39}** Further, where the existence of "a prior offense acts to transform a crime by increasing its degree, the prior offense becomes an element of the crime and must be proven by the State beyond a reasonable doubt." *State v. Harrington*, 3d Dist. Logan No. 8-01-20, 2002-Ohio-2190, ¶ 10. "When prior convictions are elements of the crime, they are not 'other acts' evidence barred by Evid.R. 404(A) and 404(B)." *State v. Savola*, 2020-Ohio-1389, 153 N.E.3d 783, ¶ 21 (8th Dist.). *See also State v. Baskin*, 2019-Ohio-2071, 137 N.E.3d 613, ¶ 32 (3d Dist.).

**{¶40}** "Another acceptable reason for admitting testimony of prior bad acts [is when it is] * * * '[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same * * *.'" *State v. Salyers*, 3d Dist. Allen No. 1-19-17, 2020-Ohio-147, ¶ 24, quoting Evid.R. 404(A)(1).

> In other words, Evid.R. 404(A)(1) allows a defendant to 'offer evidence of his good character as proof that he did not commit the act charged because such conduct is not in accord with his character[,]' but if he does, 'the prosecution [may] offer evidence of the bad character of the accused.'" *State v. Jacobs*, 4th Dist. Gallia No. 03CA24, 2004-Ohio-3393, ¶ 20, quoting Gianelli and Snyder, *Evidence*, at 229 (1996). "By introducing such evidence, the defendant 'opens the door' for the prosecution, which is then permitted to rebut or impeach the character evidence on cross-examination." *Id*. * * *.

(Citations omitted.) *State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 119. Evid.R. 405(A) permits the State to rebut the Defense's character evidence "by inquiring into relevant specific instances of the defendant's past conduct." *State v. Pennington*, 1st Dist. Hamilton Nos. C-170199, C-170200, 2018-Ohio-3640, ¶

64. *See also State v. C.W.*, 10th Dist. Franklin No. 15-AP1024, 2018-Ohio-1479, ¶ 45; *State v. Oghojafor*, 2023-Ohio-44, 205 N.E.3d 687, ¶ 80 (12th Dist.).

**{¶41}** A trial court has broad discretion over the admission or exclusion of evidence. *State v. Risner*, 3d Dist. Logan No. 8-21-47, 2022-Ohio-3878, ¶ 47. Thus, absent an abuse of discretion, a trial court's evidentiary ruling will not be reversed on appeal. *State v. Smith*, 3d Dist. Union No. 14-22-16, 2023-Ohio-3015, ¶ 58. However, the failure to object to the admission of evidence at trial waives all but plain error when challenging such testimony on appeal. *State v. Hammons*, 3d Dist. Defiance No. 4-95-3, 1995 WL 737526 (Dec. 14, 1995).

Legal Analysis

**{¶42}** Wears raises three main arguments to establish that testimony at trial about his prior conviction for domestic violence amounted to plain error. First, he argues that defense counsel should have stipulated to his prior conviction for domestic violence rather than allow Officer Rowe to identify a certified copy of this domestic violence conviction during his trial testimony. As an initial matter, we note that this testimony was not impermissible other acts testimony as this conviction was introduced to establish this offense as a fourth-degree felony.

**{¶43}** Further, Wears raised this argument as an ineffective assistance of counsel claim under his fifth assignment of error. In examining that claim, we concluded that Wears had failed to demonstrate prejudice. "[T]he prejudice standards for plain-error and ineffective-assistance-of-counsel claims are the same

* * *." *Cervantes*, *supra*, at ¶ 58. Accordingly, Wears cannot establish that he suffered prejudice under the plain error standard with this argument. Thus, his first argument is without merit.

{¶44} Second, Wears asserts that a portion of Officer Miller's testimony contained inappropriate references to his criminal history. In the following exchange, the State asked Officer Miller about her conversation with Wears just after the incident:

[Prosecutor]: * * * [W]hat were you guys discussing with Mr. Wears?

[Officer Miller]: We were discussing how many prior convictions of Domestic Violence he's had.

(Oct. 17 Tr. 80). However, this exchange continued as follows:

[Prosecutor]: Okay. And what was Mr. Wears'[s] response to you?

[Officer Miller]: He doesn't remember because of prior drug and alcohol abuse.

[Prosecutor]: And what did he refer to as his ability to recall or have memory?

[Officer Miller]: Long-term—long-term memory loss.

*Id*. In context, Officer Miller was simply explaining that she was trying to ascertain whether Wears had any prior convictions for domestic violence at the scene. She was not communicating that Wears had any such prior convictions. In fact, her testimony indicates that she did not receive any information that would suggest Wears had been previously convicted of domestic violence.

-21-

**{¶45}** Further, the prosecution also asked Officer Rowe about Wears's reported memory issues. As with Officer Miller, this line of questioning with Officer Rowe appears to have been about Wears's reported inability to remember the relevant details about this incident, not about eliciting information about any prior convictions that Wears may have had. At trial, the State was contrasting Wears's— and even Farris's—inability to remember the key details of the incident with December's clear recollection of the altercation.

**{¶46}** Even if Officer Miller's response constituted error, Wears has not raised an argument that would suggest that such error was unfairly prejudicial to his defense. Since a prior conviction was part of establishing the offense in this case, the jury still would have received evidence that Wears had a prior conviction for domestic violence. Further, the trial court also instructed the jury not to consider the testimony about any prior conviction as evidence that tended to establish "he acted in conformity" with this prior behavior. (Oct. 18 Tr. 82). A jury is presumed to follow a trial court's instructions. *State v. Akers*, 3d Dist. Logan No. 8-19-31, 2019-Ohio-5171, ¶ 32. For these reasons, his second argument is without merit.

**{¶47}** Third, Wears argues that the State improperly asked questions about his prior conviction for domestic violence when cross-examining his brother, Ronald Wears ("Ronald"). However, on direct examination, Ronald testified that Farris was "the violent one" and that Wears was not. (Oct. 18 Tr. 39). Thus, the Defense presented character evidence that suggested Wears had a peaceful or

nonviolent character and that being the primary aggressor was not in keeping with this character. As a result, the Defense opened the door for the prosecution to question Ronald about Wears's character pursuant to Evid.R. 404(A)(1) and Evid.R. 405(A).

{¶48} On cross-examination, the State asked Ronald several questions about an altercation between him and Wears. As a result of this prior altercation, Wears had received a conviction for domestic violence. *State v. Garcia*, 8th Dist. Cuyahoga No. 102546, 2016-Ohio-585, ¶ 68-69; *State v. Clinger*, 12th Dist. Preble No. CA2021-11-014, 2022-Ohio-3691, ¶ 19. This evidence was given for the permissible purpose of rebutting the evidence of Wears's peaceful character that the Defense had presented.[1] Thus, his third argument is without merit. Since Wears has failed to carry the burden of establishing plain error in each of these three arguments, his fourth assignment of error is overruled.

*Sixth Assignment of Error*

{¶49} Wears argues that the trial court erred by giving an instruction to the jury that explained a charge that Farris had received for domestic violence arose from an incident that was unrelated to the charge against Wears in this case.

Legal Standard

---

[1] We also note that the conviction that arose from the altercation between Wears and Ronald was the prior conviction that the State introduced to establish this offense as a fourth-degree felony. Thus, the jury was already aware of this prior conviction.

**{¶50}** "[C]urative instructions are presumed to be an effective way to remedy errors that occur during trial." *State v. Houdeshell*, 3d Dist. Hancock No. 5-18-02, 2018-Ohio-5217, ¶ 50, quoting *State v. Parker*, 5th Dist. Stark No. 2013CA00217, 2014-Ohio-3488, ¶ 36. A jury is presumed to follow a trial court's instructions. *Akers*, *supra*, at ¶ 32.

Legal Analysis

**{¶51}** At trial, defense counsel questioned Farris about a charge for domestic violence that she had received in March of 2022. This charge arose from an altercation between her and Wears that was unrelated to the case presently before us. Given the similarities between these separate incidents, the State was concerned that the jury might confuse the details of these different incidents or incorrectly conclude that Farris received a conviction for her conduct in the instant case. Thus, the State requested an instruction. In response, the Defense also acknowledged the potential for confusion and agreed that the trial court's curative instruction was appropriate.

**{¶52}** Under the invited-error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced the court to make." *State v. Doogs*, 3d Dist. Wyandot No. 16-19-08, 2020-Ohio-3769, ¶ 11, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27. "This court has found invited error when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the

trial judge proposed." *State v. Hathorn*, 2023-Ohio-3936, --- N.E.3d ---, ¶ 20, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324, 2000-Ohio-183, 738 N.E.2d 1178 (2000).

**{¶53}** The record indicates that Wears affirmatively consented to the curative instruction that was given by the trial court. *See State v. Artis*, 2019-Ohio-2070, 137 N.E.3d 587, ¶ 53 (3d Dist.). For this reason, he cannot complain on appeal about a curative instruction to which he gave his consent at trial. Further, we also note that, if followed, this instruction would lead the jurors to a correct understanding of the evidence. Wears has not raised an argument that would establish how his defense was unfairly prejudiced by the jurors coming to a correct understanding of the evidence. For these reasons, his sixth assignment of error is overruled.

*Seventh Assignment of Error*

**{¶54}** Wears alleges that the prosecution acted improperly when it did not permit the Defense to use the State's computer at trial.

Legal Standard

**{¶55}** "[A] defendant has the burden of affirmatively demonstrating the error of the trial court on appeal." *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 86, quoting *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7. Further, "any error will be deemed harmless if it did not affect the accused's 'substantial rights.'" *State v. Brown*, 65 Ohio St.3d 483, 485, 1992-Ohio-

61, 605 N.E.2d 46 (1992). "Without a showing of prejudice, this court must conclude that any error that may have occurred is harmless." *State v. Yenser*, 176 Ohio App.3d 1, 2008-Ohio-1145, 889 N.E.2d 581, ¶ 8 (3d Dist.).

Legal Analysis

**{¶56}** At trial, defense counsel asked to use the prosecutor's laptop computer to play footage from the body camera recordings. However, the prosecutor indicated that he would need his computer to follow along as the Defense presented its evidence. Defense counsel then indicated that he only wanted to play several seconds of the recording. After a discussion at the bench, the prosecutor agreed to play this portion of the recording from his computer. Thus, the record indicates that the Defense apparently received the use of the State's computer for the requested purpose. Accordingly, Wears has not identified an error with this argument and cannot demonstrate that he suffered any prejudice. Thus, his seventh assignment of error is overruled.

*Eighth Assignment of Error*

**{¶57}** Wears argues that the footage from the police officers' body cameras should not have been played at trial as these recordings contained inadmissible hearsay.

Legal Standard

**{¶58}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." Evid.R. 801(C). "Hearsay is typically inadmissible unless the statement falls into a hearsay exception." *Little*, *supra*, at ¶ 8. "Out-of-court statements that would otherwise be inadmissible do not become admissible simply because they were captured on a police body camera." *State v. Jones*, 2023-Ohio-380, 208 N.E.3d 321, ¶ 129 (8th Dist.).

> The purpose of body cameras is to record events in which law enforcement officers are involved to improve officer safety, increase evidence quality, reduce civilian complaints and reduce agency liability* * *— not to supplant the in-court testimony of witnesses.

*Id.* As a general matter, body camera recordings of statements should not be used at trial "to supplement the testimony of a witness or as a substitute for the testimony of a witness." *Id.* Nonetheless, "[h]earsay statements admitted that are repetitious of admissible statements and are supported by overwhelming evidence are not prejudicial." *State v. Deanda*, 2014-Ohio-3668, 17 N.E.3d 1232, ¶ 39 (3d Dist.).

**{¶59}** "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97. However, when the defendant fails to prompt such a ruling by raising a timely objection to hearsay testimony at trial, all but plain error is waived on appeal. *In re C.B.*, 3d Dist. Seneca No. 13-12-06, 2012-Ohio-2691, ¶ 33; *State v. Jackson*, 2023-Ohio-2193, 220 N.E.3d 868, ¶ 38 (3d Dist.). "[W]here other admissible substantive evidence mirrors improper hearsay, the error in allowing the hearsay is deemed harmless, since it would not have changed the outcome of the trial." *State*

Case No. 14-22-27

*v. Brown*, 2020-Ohio-3614, 154 N.E.3d 1129, ¶ 29 (3d Dist.), quoting *State v. Williams*, 2017-Ohio-8898, 101 N.E.3d 547, ¶ 17 (1st Dist.).

Legal Analysis

**{¶60}** Wears acknowledges that no objection was raised at trial over the statements contained in the body camera footage. As such, we apply a plain error standard of review to this argument. In this case, Officers Miller, Rowe, and Posterli testified as witnesses. While each of these officers was testifying, the State played some footage from each of their body cameras. The State would pause the recordings and then ask the officers questions about their actions on the night of the incident. The footage from the body camera contained statements made by the police, December, Farris, and Wears. The full videos were not played at trial for the jurors. For several reasons, we conclude that any hearsay statements that were admitted through these videos do not constitute plain error under the facts of this case.[2]

**{¶61}** First, the declarants whose statements were recorded in the body camera footage testified as witnesses at trial and were subject to cross-examination. In particular, Farris testified as to the allegations she raised and was questioned by defense counsel about the recorded statements she had made to the police. *See Jones, supra*, 2023-Ohio-380, at ¶ 151; *State v. Smith*, 2023-Ohio-603, 209 N.E.3d

---

[2] While only portions of the body camera footage were played at trial, the full recordings were admitted into evidence as exhibits. Since Wears only raises arguments about the footage that was played at trial, we will confine our analysis to the footage that was played for the jurors at trial.

-28-

883 ¶ 95 (8th Dist.) (noting a "disturbing trend" towards "victimless" prosecutions wherein a victim is not called to testify as a witness but has his or her recorded statements introduced through body camera footage at trial).

**{¶62}** Second, the recorded statements on the body camera footage were cumulative to the testimony that the declarants gave as witnesses at trial. If hearsay statements are improperly admitted, there is generally not a reasonable probability that the outcome of the proceedings would have been different where the content of the hearsay statements "was covered by other admissible evidence * * *." *State v. Jackson*, *supra*, at ¶ 52, quoting *Brown*, *supra*, 2020-Ohio-3614, at ¶ 82. *See also State v. Parker*, 3d Dist. Shelby No. 17-23-02, 2023-Ohio-2722, ¶ 15.

**{¶63}** Third, the recording contained statements that were favorable to the Defense. In particular, Farris can be heard on the recording denying that Wears had punched her. This testimony fit with the Defense's strategy of arguing that Wears did not cause any physical harm to Farris. At trial, a number of defense counsel's questions and arguments relied upon the content of these recordings. The statements in the recordings that were favorable to the Defense cannot help to establish that Wears was prejudiced. *See State v. Bruce*, 3d Dist. Union No. 14-22-11, 2023-Ohio-3298, ¶ 94 (the unopposed introduction of testimony favorable to the Defense cannot generally contribute to a finding of prejudice).

**{¶64}** Wears also points out that the police asked several leading questions while interviewing Farris and December on the body camera footage that was shown

to at trial. "A leading question 'instructs [the] witness how to answer or puts into his mouth words to be echoed back.'" *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190, 616 N.E.2d 909 (1993), quoting Black's Law Dictionary (6th Ed. 1990).

> Under Evid.R. 611(C), '[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness's testimony.' However, the trial court has discretion to allow leading questions on direct examination.

*State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 149. However, the information elicited through these leading questions on the body camera footage was not different from the information elicited through open-ended questions from Farris and December on direct examination at trial. Further, on appeal, Wears has not raised an argument that would suggest that the outcome of this proceeding would have been different in the absence of these leading questions.

**{¶65}** In conclusion, Wears has failed to establish that the introduction of the body camera footage at trial amounted to plain error under the facts of this particular case.[3] Accordingly, Wears's eighth assignment of error is overruled.

*Ninth Assignment of Error*

**{¶66}** Wears argues that the State committed a *Brady* violation when it failed to disclose the information about Farris's conviction.

Legal Standard

---

[3] As the use of body cameras has become more widespread in conducting police work, we expect more evidentiary challenges to be raised based upon the content of these recordings. The parties to a trial must exercise caution with regard to the statements captured in such footage as such recordings cannot be permitted to become a vehicle for circumventing the rules of evidence.

**{¶67}** "In *Brady v. Maryland*, the Supreme Court of the United States recognized that the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment." *State v. McNeal*, 169 Ohio St.3d 47, 2022-Ohio-2703, 201 N.E.3d 861, ¶ 19. A violation of the rule in *Brady* exists where

> (1) the state suppressed evidence, either willfully or inadvertently; (2) the evidence is favorable to the defendant as either exculpatory or impeachment evidence; and (3) prejudice results to the defendant— i.e., the evidence was material.

*State v. Jury*, 2022-Ohio-4419, 203 N.E.3d 222, ¶ 12 (6th Dist.), citing *Strickler v. Greene*, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

> [I]n determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*State v. Johnston,* 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988), quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "[N]o *Brady* violation occurs when evidence is discovered and presented during the trial." *State v. Parsons*, 2017-Ohio-1315, 88 N.E.3d 624, ¶ 77 (3d Dist.), quoting *State v. Wilson*, 3d Dist. Union No. 14-13-04, 2013-Ohio-4643, ¶ 22.

Legal Analysis

**{¶68}** In its brief, the State asserts that it did not have knowledge of Farris's prior conviction. But regardless of whether the State had this information, Wears

cannot establish a *Brady* violation because the Defense not only had this evidence but also presented testimony about this prior incident while cross-examining Farris. In fact, this testimony was the subject of the curative instruction that was challenged in Wears's sixth assignment of error.[4] Thus, Wears cannot establish a *Brady* violation with this argument. His ninth assignment of error is overruled.

*Tenth Assignment of Error*

{¶69} Wears argues the State engaged in prosecutorial misconduct that denied him his right to a fair trial.

Legal Standard

{¶70} To establish prosecutorial misconduct, the "defendant must prove the prosecutor's acts were improper and that they prejudicially affected the defendant's substantial rights." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 29, quoting *State v. Merriweather*, 2017-Ohio-421, 84 N.E.3d 72, ¶ 45 (12th Dist.). "The touchstone of the analysis 'is the fairness of the trial [or proceeding], not the culpability of the prosecutor.'" *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 200, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "The identified conduct is examined in the context of the entire proceeding." *State v. Tebelman*, 2023-Ohio-882, 211 N.E.3d 150, ¶ 91 (3d Dist.). "To demonstrate prejudice, 'the defendant must show that there

---

[4] In his brief, Wears argues his sixth and ninth assignments of error in a single analysis. Appellant's Brief, 35. Thus, the testimony that was subject to the curative instruction and the information that was the subject of the alleged *Brady* violation are unmistakably the same evidence.

is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different.'" *Id.* at ¶ 92, quoting *State v. Cureton*, 9th Dist. Medina Nos. 03CA0009-M, 2003-Ohio-6010, ¶ 27.

Legal Analysis

**{¶71}** Wears reasserts the arguments that he raised in his seventh, eighth, and ninth assignments of error to establish a prosecutorial misconduct claim. However, we have already concluded that Wears failed to either identify an error or establish that he was prejudiced in the arguments that were raised under these three assignments of error. These arguments fail to establish prosecutorial misconduct for the same reasons that they were found to be without merit in our prior analyses. Thus, his tenth assignment of error is overruled.

*Conclusion*

**{¶72}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Union County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**MILLER, P.J. and ZIMMERMAN, J., concur.**

**/hls**