OPINION
{¶ 1} Defendant-appellant, Deandre R. Henry, appeals from the judgment of the Franklin County Municipal Court, whereby the trial court convicted appellant of aggravated menacing pursuant to a jury trial.
 {¶ 2} On July 28, 2005, plaintiff-appellee, the State of Ohio, charged appellant with aggravated menacing, in violation of R.C. 2903.21, alleging that appellant:
Knowingly cause[d] another, to wit: Benny Wells, to believe that he would cause serious physical harm to said other person, to wit: pointed a firearm at victim and stated "I'll fuckin' show you!"
 {¶ 3} Appellant pled not guilty to the charge, and a jury trial ensued. At trial, Benny Wells testified on appellee's behalf that, during the morning of July 28, 2005, Wells walked past appellant's mother's house. Wells testified that appellant stated: "Keep giving mean mugs if you want to." (Tr. at 25.) Wells explained at trial that "mean mugs" "is a term you use when you're staring at somebody, like if you stare at them too long, they take it as a dirty look or something." (Tr. at 25.) Wells then testified that he responded to appellant by saying "you still on that?" (Tr. at 25.) Wells explained at trial that he was referring to an argument that he and appellant had had three days prior and that he believed appellant "still had an attitude or something about our little argument we had." (Tr. at 25.)
 {¶ 4} Wells then testified to the following. Appellant proceeded to state: "I'll show you." (Tr. at 25.) Appellant then walked into his mother's house, and Wells began to walk away because he "knew it was something [he] shouldn't stick around for." (Tr. at 26.) Thereafter, Wells saw appellant with a nine-millimeter firearm. Appellant raised the firearm and stated: "I told you I'll show you, mother fucker." (Tr. at 26.) At that point, Wells fled because he thought that appellant was going to shoot and kill him.
 {¶ 5} As Wells fled, he tried to call 911 on his cell phone, but he twice lost communication with the 911 operator. Ultimately, Wells ran to a restaurant parking lot where a police officer was located. Also, at that time, Wells received a "two-way call on [his] cell phone stating that [his] car had been shot up." (Tr. at 31.) When Wells provided such testimony, appellant's trial counsel objected on hearsay grounds. The trial court overruled the objection, stating: "It's not offered at this time for proof of the matter asserted. It's offered for the content and perhaps what he may have done next." (Tr. at 31-32.)
 {¶ 6} Next, Wells testified as follows. Wells informed the officer that his "car had been shot up." (Tr. at 32.) While Wells conversed with the officer, a vehicle drove past Wells. Appellant was a passenger, and appellant "blew [Wells] a kiss[.]" (Tr. at 32.) Wells interpreted appellant's gesture as a reference to what he did to Wells' vehicle. When Wells went to his vehicle, he noticed that the vehicle had several bullet holes, that the window of the vehicle was "knocked out[,]" and that the gas line was damaged. (Tr. at 33.)
 {¶ 7} During cross-examination, Wells testified that he has been employed "[o]ff and on for about 10 years[,]" and that he has prior felony convictions, including a felony receiving stolen property conviction. (Tr. at 37.) Next, the following exchange took place between Wells and appellant's trial counsel:
Q. [BY APPELLANT'S COUNSEL] * * * You stated that you and [appellant] had had a prior argument and you called it a small ordeal. Can you give me a little more detail?
A. Three days prior to this alleged — this incident, we had an argument because he was distributing drugs to us and I didn't approve of doing that.
[APPELLANT'S COUNSEL]: Objection, Your Honor.
THE COURT: You opened the door; overruled.
(Tr. at 45-46.)
 {¶ 8} Appellant's counsel proceeded to ask additional questions about Wells' testimony regarding the prior argument, and Wells stated that he objected to appellant selling drugs to Wells' uncle. Wells testified that the argument occurred three days prior to the aggravated menacing threat that took place on July 28, 2005. Wells also testified that, during the argument, he "took the drug and * * * tossed it back at [appellant], told him that it wasn't going to happen. And [appellant] stated * * *' Don't be running the money off.'" (Tr. at 47.)
 {¶ 9} Next, Wells clarified during cross-examination that his uncle called Wells on the cell phone to reveal the news about Wells' vehicle being damaged. Wells also clarified that his uncle stated that appellant "shot [Wells'] car up." (Tr. at 51.) Appellant's trial counsel asked if Wells' uncle was going to testify, and Wells stated that his uncle was in the hospital because "[h]e got beat up real bad." (Tr. at 51.) Appellant's trial counsel also asked if Wells' uncle "had been contacted by the police or the prosecutor[,]" and Wells stated: "No. He had asked for his own safety not to be brought into this because the house he lived in had been shot up prior to this incident and he's scared for his life." (Tr. at 52.)
 {¶ 10} On re-direct examination, Wells testified that he previously witnessed appellant selling drugs and that appellant had previously used weapons in the past. Wells also testified that he had personal knowledge of specific incidents of appellant's past violent behavior. Wells also indicated at trial that he interpreted appellant's statement: "Don't be running the money off" to mean that Wells "was taking the money out of [appellant's] pocket." (Tr. at 55.)
 {¶ 11} Additionally, on re-direct examination, Wells reiterated that, on July 28, 2005, his vehicle sustained bullet hole damage, broken windows and a broken gas line. Wells also clarified at trial that his vehicle sustained a broken "heater core." (Tr. at 56.) Wells then identified at trial nine photographs depicting the damage to his vehicle, and the trial court admitted the photographs into evidence.
 {¶ 12} Next, Columbus Police Officer Todd Waugh testified to the following on behalf of appellee. On July 28, 2005, Wells approached Officer Waugh. Wells was "sweating; he was out of breath; wide eyed, looked frightened, looked scared, and was looking around behind him as if he was looking to see if there was anyone around or anyone behind him." (Tr. at 63.) Wells told Officer Waugh "that a man had pointed a gun at him and was going to shoot him." (Tr. at 63.) During the conversation, Wells answered his cell phone "and sounded excited on the phone and told [Officer Waugh] his car had been shot, shot up." (Tr. at 64.)
 {¶ 13} During Officer Waugh's testimony, appellee asked Officer Waugh if he "had reason to doubt" Wells, and he testified that he had no reason to doubt what Wells was telling him. (Tr. at 65.) Officer Waugh concluded as such because of "the way [Wells'] reaction was, he ran up, he had a look of fear on his face. He was excitable, sweating, out of breath, as if he'd been running. He described the weapon, and then, after that, he got the call that there had been shots fired. * * * [W]e found shell casings in the exact area where he said this offense had occurred. We had phone calls from people, all of which corresponded with his call — with his story." (Tr. at 66-67.)
 {¶ 14} Officer Waugh confirmed at trial that Wells told him that appellant threatened him with a firearm that "fired 9-millimeter rounds," and Officer Waugh testified that, when he went to Wells' vehicle, he found nine-millimeter shell casings on the sidewalk near the vehicle. (Tr. at 71.) However, Officer Waugh testified that police did not recover the firearm that appellant used during the incident. Lastly, Officer Waugh testified that he, on appellee's behalf, filed charges against appellant because, in part, Wells' "story never changed." (Tr. at 71.)
 {¶ 15} Columbus Police Sergeant Alex Behnen testified to the following on appellee's behalf. Sergeant Behnen observed Wells' vehicle and noticed "bullet holes that had gone through the body of the car, [and] the rear windows[.]" (Tr. at 83.) Sergeant Behnen also noticed shell casings around the vehicle. Officers searched the house of appellant's mother and found firearms at the house. However, Sergeant Behnen made no indication that officers found a nine-millimeter firearm at the house, but they did find "a 9-millimeter unspent round" of bullets. (Tr. at 87.)
 {¶ 16} Afterwards, appellee rested its case, and appellant's trial counsel called appellant's mother and cousin to testify. Both witnesses testified that Wells made threats at appellant's mother's house on July 28, 2005. Both witnesses also testified that appellant was not present in the house when Wells made the threats. However, on cross-examination, appellant's mother testified that it was possible that appellant was "outside in front of the house[.]" (Tr. at 105.) Yet, on cross-examination, appellant's cousin stated that appellant was not in or around appellant's mother's house when Wells made the threats. Moreover, on cross-examination, appellant's cousin recalled Wells expressing anger at appellant for selling drugs to people in the neighborhood.
 {¶ 17} During the rebuttal portion of its closing argument, counsel for appellee stated:
[Appellant's trial counsel] made issue of the fact that we didn't bring in a parade of witnesses to say what happened. The truth of the matter is, people are afraid to come forward in a situation like this. That's the truth of the matter. Truth of the matter, people are afraid of the [appellants] of the world * * *. (Tr. at 135.)
 {¶ 18} During jury instructions, the trial court instructed the jury that they were "the sole judges" of "the credibility of the witnesses[.]" (Tr. at 138.) Thereafter, the jury found appellant guilty as charged, and the trial court sentenced appellant accordingly.
 {¶ 19} Appellant appeals, raising one assignment of error:
The failures of Appellant's trial counsel constituted ineffective assistance, thereby depriving Appellant of his rights as guaranteed by the Sixth Amendment to the United States Constitution and comparable provisions of the Ohio Constitution.
 {¶ 20} In his single assignment of error, appellant contends that his trial counsel's performance rose to the level of ineffective assistance. We disagree.
 {¶ 21} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel.Strickland v. Washington (1984), 466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 22} A properly licensed attorney is presumed competent.State v. Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, at ¶ 88, citing Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 301. Moreover, there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" State v. Bradley (1989), 42 Ohio St.3d 136,142, quoting Strickland at 689. In matters regarding trial strategy, we will generally defer to defense counsel's judgment.State v. Carter (1995), 72 Ohio St.3d 545, 558; see, also,State v. Carpenter (1996), 116 Ohio App.3d 615, 626, citingBradley at 144 (holding that we are to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). We will only reverse on trial strategy grounds if defense counsel's trial strategy deviated from the standard of reasonableness. State v. Burgins (1988), 44 Ohio App.3d 158,160; State v. Newsome, Ashtabula App. No. 2003-A-0076,2005-Ohio-3775, at ¶ 8.
 {¶ 23} Here, appellant first argues that his trial counsel was ineffective for failing to object to testimony and evidence related to appellant shooting Wells' vehicle. As noted above, appellant's trial counsel did object on hearsay grounds when Wells first testified that, after the threat, he received a cell phone call indicating that his vehicle "had been shot up." (Tr. at 32.) However, appellant asserts that his trial counsel instead needed to object on relevancy grounds.
 {¶ 24} By limiting the objection to hearsay grounds, appellant disregarded relevancy challenges to testimony and evidence about appellant shooting Wells' vehicle. See Evid.R. 103; Campbell v. Johnson (1993), 87 Ohio App.3d 543, 551. Regardless, for the following reasons, we conclude that a relevancy objection was not warranted.
 {¶ 25} As a general rule, evidence of an individual's other criminal acts, which are independent from the offense for which the individual is on trial, is inadmissible in a criminal trial.State v. Wilkinson (1980), 64 Ohio St.2d 308, 314. Nonetheless, R.C. 2945.59 and Evid.R. 404(B) denote exceptions to the general rule. State v. Covrett (1993), 87 Ohio App.3d 534, 541; Statev. Hodge, Franklin App. No. 02AP-1358, 2003-Ohio-5492, at ¶ 20-22.
 {¶ 26} Under Evid.R. 404(B):
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
Likewise, R.C. 2945.59 states:
In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.
Evid.R. 404(B) is in accord with R.C. 2945.59. State v. Broom
(1988), 40 Ohio St.3d 277, 281.
 {¶ 27} Other acts evidence is relevant and admissible under the "scheme, plan, or system" exception in R.C. 2945.59 when the acts are "inextricably related" to the crime charged such that the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime. State v. Thompson (1981), 66 Ohio St.2d 496,498; Hodge at ¶ 23.
 {¶ 28} Here, for the following reasons, we conclude that the testimony and evidence about appellant shooting Wells' vehicle are "inextricably related" to the aggravated menacing charge and, thus, the testimony and evidence about the shooting are admissible under R.C. 2945.59. The shooting occurred very soon after the threat that underlies the aggravated menacing charge and, in this regard, aided in demonstrating Wells' subjective reasonable belief of fear, an element of aggravated menacing. See R.C. 2903.21; State v. Goodwin, Franklin App. No. 05AP-267,2006-Ohio-66, at ¶ 15. It is irrelevant that the shooting occurred after the threat that underlies the aggravated menacing charge because R.C. 2945.59 specifically applies to acts that have occurred either prior to or subsequent to the crime charged. See State v. DeBoe, Huron App. No. H-02-057, 2004-Ohio-403, at ¶ 72-73; State v. Smith, Ross App. No. 02CA2687,2003-Ohio-5524, at ¶ 12.
 {¶ 29} In so concluding, we reject appellant's claim that the record does not sufficiently establish that he shot Wells' vehicle. The Ohio Supreme Court has held that substantial evidence must prove that an individual committed the other acts under Evid.R. 404(B) or R.C. 2945.59 in order for the other acts evidence to be admissible. See Broom at 282-283. Here, Wells testified that appellant threatened him with a nine-millimeter firearm, and officers discovered nine-millimeter shell casings near Wells' vehicle. Likewise, we find it significant that appellant made the aggravated menacing threat with a nine-millimeter firearm while at his mother's house, and officers discovered unspent nine-millimeter bullets at appellant's mother's residence. Thus, in accordance with proof considerations in Broom, we conclude that the record substantially proves that appellant shot Wells' vehicle.
 {¶ 30} Because a relevancy objection would have been without merit in regards to the testimony and evidence related to appellant shooting Wells' vehicle, we note that appellant's trial counsel was not required to raise the relevancy objection. SeeState v. Taylor (1997), 78 Ohio St.3d 15, 31. Accordingly, we conclude that appellant's trial counsel was not deficient by not objecting on relevancy grounds to the testimony and evidence related to appellant shooting Wells' vehicle. See Strickland at 687.
 {¶ 31} Next, appellant claims that his trial counsel rendered ineffective assistance by opening the door to testimony that established that, three days before appellant threatened Wells, Wells argued with appellant about selling drugs to Wells' uncle. In examining the issue, we note below that appellee nonetheless had its own right to elicit such information regarding Wells arguing with appellant over selling drugs to Wells' uncle.
 {¶ 32} Specifically, we note that appellant made the aggravated menacing threat after Wells referenced the prior argument over selling drugs to Wells' uncle. In this regard, evidence about the prior argument between appellant and Wells places into context appellant's threat and, similarly, explains the sequence of events leading up to the aggravated menacing and provides a complete picture of the aggravated menacing. Therefore, we conclude that the evidence about Wells' prior argument with appellant is "inextricably related" to the aggravated menacing charge. As such, the other acts evidence is relevant and admissible under the "scheme, plan, or system" exception to R.C. 2945.59. See Thompson at 498; Hodge at ¶ 23. Similarly, the evidence illuminates appellant's motive to make the aggravated menacing threat. Indeed, Wells testified that he believed that, on the day appellant made the aggravated menacing threat, appellant "still had an attitude or something about our little argument we had." (Tr. at 25.) Pursuant toState v. Curry (1975), 43 Ohio St.2d 66, 70-71, the question of motive is generally relevant in all criminal trials, even though the prosecution need not prove motive in order to secure a conviction, and Evid.R. 404(B) and R.C. 2945.59 allow other acts evidence as proof of motive. Because the jury heard evidence that appellee was properly able to elicit, and did in fact elicit, we find no prejudice from appellant's claim that his trial counsel opened the door to testimony regarding Wells' argument with appellant about selling drugs to Wells' uncle. See Strickland
at 687, 694.
 {¶ 33} We also reject appellant's contention that his trial counsel rendered ineffective assistance when he elicited testimony from Wells that his uncle "asked for his own safety not to be brought into this because the house he lived in had been shot up prior to this incident and he's scared for his life." (Tr. at 52.) In making such a claim, appellant first contends that Wells' statement relays inadmissible hearsay from his uncle. Under Evid.R. 801(C), hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Initially, we recognize that the portion of Wells' testimony that his uncle is "scared for his life" does not appear to relay an out-of-court statement from Wells' uncle, but appears to be Wells' characterization of his uncle's feelings. (Tr. at 52.) Nonetheless, even considering Wells' above testimony as relaying in its entirety an out-of-court statement, we acknowledge that Wells' testimony was not offered for the truth of the matter asserted, i.e., that his uncle's house had "been shot up prior to this incident" and that he feared for his life, but was offered as an explanation why his uncle did not want to be involved in appellant's aggravated menacing case. (Tr. at 52.) Thus, Wells' above-noted testimony does not constitute inadmissible hearsay. Evid.R. 801(C) and 802.
 {¶ 34} We further deduce that, when appellant's trial counsel asked Wells whether officers or the prosecution interviewed Wells' uncle, appellant's trial counsel sought to impeach Wells' testimony by highlighting that, although Wells claimed that his uncle witnessed crucial events, officers and the prosecution did not even interview his uncle. Because appellant's trial counsel asked the above question through reasonable trial strategy to discredit Wells, we conclude that appellant's trial counsel did not render ineffective assistance by asking the question.Carter at 558; Carpenter at 626; Bradley at 144; Burgins
at 160; Newsome at ¶ 8. We decline to find ineffective assistance even though appellant deems questionable trial counsel's decision to ask the above question. State v. Smith
(2000), 87 Ohio St.3d 424, 441.
 {¶ 35} Appellant also alleges that his trial counsel performed ineffective assistance by failing to object to Officer Waugh's testimony that he had no reason to doubt Wells' version of events. It is improper for a witness to vouch for the credibility of a victim's account of an incident. See State v.Boston (1989), 46 Ohio St.3d 108, 129, modified on other grounds by State v. Dever (1992), 64 Ohio St.3d 401. This is so because "it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses." Boston at 129, quoting State v.Eastham (1988), 39 Ohio St.3d 307, 312 (H. Brown, J., concurring).
 {¶ 36} However, in State v. Wilson, Franklin App. No. 04AP-727, 2005-Ohio-6749, at ¶ 25-29, we rejected a defendant's claim that his trial counsel's performance rose to the level of ineffective assistance when trial counsel elicited testimony from an officer that vouched for the victim's credibility. We noted, in pertinent part, that the jury "heard the victim's testimony and was able on its own to assess her credibility." Id. at ¶ 29, citing State v. Shafer, Cuyahoga App. No. 79758, 2002-Ohio-6632. Thus, we found "no prejudice" under the second prong of Strickland "as [the defendant] has not shown it probable that the [law enforcement officer's testimony] contributed to the verdict." Wilson at ¶ 29. Here, likeWilson, the jury "heard the victim's testimony and was able on its own to assess" the victim's credibility. Id. at ¶ 29. Indeed, the trial court instructed the jury that they were "the sole judges" of "the credibility of the witnesses," and we presume that jurors follow the trial court's instructions. (Tr. at 138.) See State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044, at ¶ 39. Therefore, based on the circumstances of this case, as inWilson, we find no prejudice here under the second prong ofStrickland stemming from trial counsel's failure to object to Officer Waugh vouching for Wells' credibility. See Strickland
at 687, 694.
 {¶ 37} Lastly, appellant claims that, even if the above alleged errors do not individually rise to the level of ineffective assistance of counsel, the alleged errors cumulatively highlight the total lack of adequate representation provided to appellant at trial and cast doubt on the reliability of the verdict in this case. In State v. Sieng (Dec. 30, 1999), Franklin App. No. 99AP-282, we recognized trial counsel's separate instances of deficient performance did not "rise to the level of prejudice necessary to find ineffective assistance of counsel," but, collectively, the instances of deficient performance "served to deprive [the] defendant of a fair trial." Id., citing State v. DeMarco (1987), 31 Ohio St.3d 191, 196. As a result of trial counsel's collective deficient performance inSieng, the jury was able to consider "improper bolstering of [a witness's] testimony and * * * character attacks on [the] defendant[.]"
 {¶ 38} Here, unlike Sieng, appellant has not raised collective instances of trial counsel's deficient performance that deprived appellant of a fair trial. As noted above, for example, Officer Waugh vouching for Wells' credibility did not ultimately prejudice appellant's trial, and appellant's other alleged errors did not provide the jury with information that it was not otherwise entitled to obtain.
 {¶ 39} Accordingly, based on the above, we conclude that appellant's trial counsel's performance did not rise to the level of ineffective assistance. As such, we overrule appellant's single assignment of error, and we affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
Bryant and Travis, JJ., concur.