[Cite as *State v. Douglas*, 2025-Ohio-2434.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                      :

        Plaintiff-Appellee,         :        Case No. 23CA21

                                    :

        v.                          :

                                    :

KEITH DOUGLAS,                      :        <u>DECISION AND JUDGMENT ENTRY</u>

                                    :

        Defendant-Appellant.        :        **RELEASED: 07/01/2025**

                                    :

_____

<u>APPEARANCES</u>:

L. Scott Petroff, Athens, Ohio for appellant.

Lisa A. Eliason, Athens City Law Director, and Jessica Branner Hittle, Assistant Athens City Law Director, Athens, Ohio, for appellee.

_____

Wilkin, J.

**{¶1}** This is an appeal from an Athens County Municipal Court judgment entry that convicted appellant Keith Douglas ("Douglas") of two counts of domestic violence under R.C. 2919.25(C), fourth-degree misdemeanors. On appeal Douglas maintains the trial court erred by admitting improper character evidence. In addition, Douglas contends the trial court erred by admitting a bodycam video for the purposes of demonstrating the victims' demeanor when the bodycam video contained hearsay and other-acts evidence. After reviewing the parties' arguments, the record, and the applicable law, we find the trial court erred in admitting certain character and other-acts evidence. Additionally, we find that the bodycam videos admitted by the trial court contained inadmissible hearsay and also contained inadmissible other-acts evidence. However, we further find that the evidence presented at trial overwhelmingly supported

the conclusion reached, and, thus, we find that any error was harmless and did not affect the outcome of the trial.  Therefore, we affirm the trial court's judgment of conviction.

BACKGROUND

{¶2}   On May 22, 2023, a complaint was filed in the Athens County Municipal Court charging Douglas with two counts of domestic violence in violation of R.C. 2919.25(C) for threatening his wife and adult daughter.  Douglas entered a not guilty plea and the court held a status conference on August 23, 2023.  At the status conference, the trial court discussed several evidentiary issues with the parties, which are the subject of this appeal.

{¶3}   The case came on for trial on August 24, 2023.  The State called three witnesses:  wife, adult daughter, and the responding deputy.  Douglas testified on his own behalf.

{¶4}   The evidence showed that Douglas and wife had been married for 27 years.  Approximately six years ago Douglas suffered a back injury, had been unable to work, and had struggled with pain management and an escalating use of prescription narcotic medication since then.  Wife testified that there was a change in Douglas' behavior due to his drug use, and all in the home were aware of it.

{¶5}   On May 19, 2023, Douglas used much profanity and threatened his wife and daughter, who lived with him.  During the argument, Douglas exclaimed he needed money for cigarettes and gas.  When wife refused, Douglas became irate.  He slammed her workbag so hard the contents went everywhere.  In a fit of rage, he shoved her coat off a chair and then shoved her coat and workpants down the kitchen trash can.  Over

the course of the incident, Douglas said to his daughter, "you're afraid of me, aren't you?  You better be."

{¶6}    Wife also testified that Douglas said, "[y]ou guys don't think I'll do anything, do you?  You don't think I'll do anything. . . . I'll slit your throat.  I'll slit everybody's throats.  I've killed a person before, and I got away with it.  What makes you think I won't do it again?"  Douglas also said, "I burnt my sister's trailer down, that F-in B.  What makes you think I can't burn [t]his trailer down?  I will burn it down.  It's my damn trailer.  I'll burn[ ]down everything on the property."  Douglas also punched a hole in the drywall that day, threw knives at a wall, and almost struck the daughter with the dog's kennel door.  He also threatened to tear the copper wiring out of the walls of the home and take the coil off the heat pump to scrap them and sell the generator for money purportedly to buy cigarettes.

{¶7}    Wife testified that she was "petrified" that day and that she "knew we were unsafe."  She believed "[s]omeone had to intervene before somebody was really hurt."  Wife also said she believed Douglas meant what he was saying.  After wife testified, the State played the bodycam video with wife's statement to law enforcement, subject to defense objection.

{¶8}    Daughter testified similar to wife.  According to daughter, Douglas said, "you're afraid of me, aren't you?  Well, you better be."  And she said, "yes, I'm afraid of drug addicts."  Douglas also said, "yeah, you F-in B, you['re] going to see what I'm going do to you, you little cunt.  I'll just slit you in the F-ing throat."  He said further, "I'll slit everybody's M-Fing throat on the whole hillside.  You're going to see what I can do, just watch."  He said, "I killed a person during my last divorce, when I was out of the house."

He went on to say, "[n]one of you guys know about it. . . . and I can kill you too. You can just watch." He stated, "you know what happened to the last B that crossed me, and my F-ing B of a sister, she crossed me and I burnt her whole F-ing trailer down, and I can burn this one down too. It's mine. I'll burn the whole F-ing place down." Daughter called police at wife's request. Daughter also said she was scared, and believed she was in danger. After daughter testified, the State played the bodycam video with her statement to law enforcement, subject to defense objection.

{¶9} Deputy Preston added testimony that the victims appeared to be afraid when he responded to the call. Further, he stated Douglas denied he made any threats. Douglas also told Preston he had been held down and hit in the face, though Preston saw no marks that would indicate that. After the State rested, Douglas testified on his behalf, denying the incident.

{¶10} The jury found Douglas guilty of both charges. The court proceeded to sentencing that same date. After hearing argument, the trial court sentenced Douglas to probation. It is from this judgment that Douglas appeals, with two assignments of error.

## ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ALLOWED THE INTRODUCTION OF IMPROPER CHARACTER EVIDENCE.

II.   THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ALLOWED THE INTRODUCTION OF HEARSAY STATEMENTS WHERE THOSE STATEMENTS CONTAINED SIGNIFICANT STATEMENTS ABOUT THE OTHER ACTS OF APPELLANT.

### I. First Assignment of Error – Admission of Character Evidence

{¶11}  In his first assignment of error, Douglas asserts that the trial court erred throughout the trial by admitting evidence of his drug use.  He avers it was improper for the trial court to allow admission of this other-acts evidence through witness testimony and video recordings of law enforcement interviews with the victims as evidence of the victims' state of mind.  According to Douglas, the crucial issue in a true threats case is the mental state of the speaker, not the listeners, and further, he argues, that the evidence was not offered for a nonpropensity purpose.  Additionally, Douglas claims the victim's mental state was not particularly a disputed issue in the case because Douglas' defense was that no threats were made in the first place.  Finally, Douglas points out that the trial court did not engage in the proper analysis when determining whether the evidence should be admitted, and did not provide a limiting instruction to the jury about other-acts evidence.  As such, he claims he was prejudiced by other-acts evidence, and the admission of this evidence did not result in harmless error.

{¶12}  The State replies that the victims' belief is a material element and a central issue to its case because it was required to prove this fact as an element of the offense.  The State reasons that placing Douglas' threats in the context of his drug use and abuse was critical for the jury to understand why the victims believed he would cause them imminent physical harm.  The State also asserts that evidence of Douglas' drug use was necessary to prove his intent to commit the offense.  Finally, the State claims that the evidence is admissible because it was necessary to provide a "complete picture of the alleged crime" to the jury.  The State concludes that even if the introduction of the evidence was improper, the result was harmless error.

A. Law

**{¶13}** Evid.R. 404(B) provides, in pertinent part:

(1) *Prohibited Uses.* Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses; Notice.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Similarly, R.C. 2945.59 states:

In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Thus, while the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show the accused acted in conformity therewith is prohibited, the evidence may be admissible for other purposes. *State v. Sims*, 2023-Ohio-1179, ¶ 95 (4th Dist.), citing *State v. Williams*, 2012-Ohio-5695, syllabus.

**{¶14}** Courts use a three-step analysis to determine whether evidence of other crimes, wrongs or acts of an accused may be admissible. *State v. Stevens,* 2023-Ohio-3280, ¶ 125 (4th Dist.), citing *State v. Ludwick,* 2022-Ohio-2609, ¶ 17 (4th Dist.), citing *State v. Williams*, 2012-Ohio-5695, ¶ 19.

The first step is to consider whether the other[-]acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other[-][acts evidence is

> presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R. 403.

*State v. Bennett*, 2024-Ohio-4557, ¶ 54 (4th Dist.), *Williams* at ¶ 20. Because the first two steps of the test are questions of law that do not involve an exercise of discretion, we conduct a de novo review of those steps. *Id.,* citing *Stevens* at ¶ 126, quoting *State v. Hartman,* 2020-Ohio-4440, ¶ 22. However, the third step, involving Rule 403's balancing test, "constitutes a judgment call," so we apply an abuse-of-discretion review to that step. *Id.*, *Stevens* at ¶ 126, quoting *Hartman* at ¶ 30. "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts." *Hartman* at ¶ 22. Further, "[t]o properly apply the rule, . . . courts must scrutinize the proponent's logic to determine exactly how the evidence connects to a proper purpose without relying on any intermediate improper-character inferences." *Hartman* at ¶ 23.

### B. Analysis

{¶15} During the status conference, the defense made an oral motion in limine to exclude any and all reference, evidence, or testimony regarding Douglas' supposed drug abuse because such testimony would be both speculative and character evidence. The State responded that the "recorded interviews are just laden with references to [Douglas'] abuse of not only [O]xycontin, but street drugs. The reason it's so important is because this . . . didn't occur in a vacuum." The State explained the context was particularly important because the issue was the threat of physical harm. The State further argued

[T]his whole thing started over him not—her not wanting to buy him cigarettes.  And the reasons she didn't want to buy him cigarettes is because she's the only working member of that household.  The reason she's the only working member of the household is because in 2017, he hurt his back and had botched back surgery that lead to his prescribed—prescription of [O]xycontin, that now he goes to a pain clinic, and now he's abusing [O]xycontin. . . . So we can't get there without all this background and foundational stuff.

The defense responded that the evidence was still character evidence, and speculative.

{¶16}  After watching the video, the trial court ruled that the understanding of drug abuse is a significant part of why [the victims] felt threatened, and why they took the threats seriously.  Thus, the trial court reasoned the evidence was relevant to explain why they felt threatened.  The defense clarified that it objected not necessarily because the evidence wasn't relevant, but because the evidence was character evidence and speculative.  The trial court determined it would permit the victims to testify as to why they felt threatened but not allow the testimony if it were offered "just to paint [Douglas] in a bad light."

{¶17}  On the day of trial, when witnesses referred to Douglas' drug use, the defense objected, but the trial court overruled the objection based on its ruling at the status conference.  In addition, right before the State played each bodycam video, the defense once again reiterated its objections to testimony regarding drug use, asserting it was not only speculative but contained character evidence.

{¶18}  On appeal, Douglas points to several instances of testimony of his alleged drug use or dealings that came into evidence in the trial.  At one point, the State asked wife if Douglas was prescribed any medication, to which the defense objected, and the court overruled it based on the pretrial conferences.  Additionally, several statements regarding drug use were admitted through the bodycam videos.  During wife's bodycam

interview, she told the responding officer that Douglas started taking Oxycodone and it "makes him a monster," and that he "does street drugs" and "smokes marijuana daily." Further, wife's bodycam interview includes wife's statement that Douglas "has drug trafficking in and out of the driveway all the time." In addition, the bodycam shows wife explaining she felt she had no power when Douglas mixed prescription drugs with street drugs. Similarly, at trial, daughter testified that she told Douglas she was afraid of "drug addicts" while he was threatening her, to which the defense objected at trial. Then, during daughter's bodycam video interview, daughter stated her father was suffering from withdrawals from opioids, that her father uses "street drugs," and that while her mother was at work the day before, Douglas had "drug people" come to the house.

{¶19} Thus, during the trial, Douglas clearly set forth his general objection to the introduction of other-acts evidence, particularly involving drug abuse. At the close of evidence, the State offered the bodycam videos as exhibits without any redactions. The defense once again renewed its objection, as it had before the bodycam statements were played to the jury. However, as it did at the status conference, the defense asked that the jury instruction limiting the jury's use of the bodycam video to be considered for the purposes discussed at the pretrial. Additionally, while the trial court gave a limiting instruction in some respects, it did not specifically address in the instruction other-acts evidence.

{¶20} We begin our analysis by considering whether the other-acts evidence in the instant case is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. The record shows that the argument occurred because Douglas wanted money for

cigarettes but escalated to other issues, like divorce.  While the evidence did show that Douglas had used drugs in the past, the video evidence of both victims on the day of the incident and their trial testimony show that the victims simply speculated about whether Douglas was undergoing withdrawals, or that his behavior was related to drug use *at the time of the incident.*  At trial and on the bodycam, wife stated he wanted money for cigarettes and gas.  When Deputy Preston asked wife what drugs Douglas was on *that day,* she responded, "none that I know of."  "The supposition that proposed other-acts evidence, if true, would be relevant is not a license for courts to allow the jury to consider every unsubstantiated accusation.  Rather, there must be some threshold showing that the act for which the evidence is offered occurred."  *State v. Hartman,* 2020-Ohio-4440, ¶ 28.  Thus, certain statements from the bodycams such as Douglas started taking Oxycodone and it "makes him a monster," "he smokes marijuana daily," that "drug people" had come to the house the day before, that "he has drug trafficking in and out of the driveway all the time" is not necessarily relevant to show the victims' beliefs regarding whether he would cause imminent physical harm that day and time in May.

{¶21}  Douglas specifically contends that this type of evidence regarding his drug use is not relevant to show the victims' mental states, because the victims' mental states were not in dispute.  However, the deterioration of his marriage caused by Douglas' drug use *is* relevant for background information to show why the victims were subjectively afraid that day.  The record indicates that Douglas' defense was centered on an argument about divorce, asserting no threats were made.  However, the victims' fear of Douglas, due to his recent behavioral changes, suggests that the argument

involved more than just discussions about money for cigarettes or a divorce.  If the argument had been solely about divorce, it is unlikely the victims would have been frightened.  The relevance lies in the fact that his behavior, influenced by back surgery and drug use, caused them to take his threats seriously.  Thus, most of the evidence regarding Douglas' back injury and dependence on drugs that came in through trial testimony on the witness stand is relevant, whereas the majority of the statements on the bodycam were irrelevant, such as the statements that Douglas does "street drugs," that he "smokes marijuana daily," that "he has drug trafficking in and out of the driveway," that "drug people came to the house the day before," and so forth.

{¶22}  Douglas also argues that the relevant inquiry in a true threats case is about the defendant's state of mind, not the listener's.  In that light, he cites a recent United States Supreme Court case.  *See Counterman v. Colorado*, 600 U.S. 66, paragraph 1 of the syllabus ("the First Amendment requires proof in a criminal action regarding a true threat that the defendant had some subjective understanding of the threatening nature of his statements").  However, *Counterman* involved a Colorado statute in which the mens rea for a defendant accused of making certain communications harassment was not adequately specified.    In contrast, R.C. 2919.25(C) provides, "[n]o person, by threat of force, shall knowingly *cause a family or household member to believe* that the offender will cause imminent physical harm to the family or household member."  Thus, the Ohio statute differs from the Colorado statute in that it sets forth the mens rea as "knowingly."  Further, a specific element of this offense requires the State to prove that the family or household member believed the

offender would cause imminent physical harm. Thus, the victim's state of mind is an element of the offense.

{¶23} Second, we examine whether the State offered the certain character evidence for a nonpropensity purpose. Douglas claims it did not. At trial, the State contended that the evidence was offered to show the victims' state of mind, as well as background information, or a "complete picture" of the offense. Douglas observes that "[t]he nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *State v. Hartman*, 2020-Ohio-4440, ¶ 27, citing *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Douglas did not concede that the victims were fearful. The fact Douglas contested that threats were made at all put every element of the offense at issue before the jury and required the State to prove the victims' subjective belief of imminent physical harm. Thus, the victims' state of mind was a material issue in the case.

{¶24} It is important to note that under "permitted uses," Rule 404(B)(2) provides, as set forth above, "[t]his evidence may be admissible *for another purpose, such as* proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." (Emphasis added.) "Though Evid.R. 404(B) lists specific examples of permissible nonpropensity purposes for which other-acts evidence may be admitted, its list is not exhaustive." *State v. Echols,* 2024-Ohio-5088, ¶ 31, citing *State v. Morris,* 2012-Ohio-2407, ¶ 18. For example, this court has specifically found that "evidence of other acts is admissible when the challenged evidence plays an integral part in explaining the sequence of events and is necessary to give a complete picture of the alleged crime." *State v. Sims,* 2023-Ohio-1179, ¶ 98,

citing *State v. Thompson,* 66 Ohio St.2d 496, 498 (1981), *State v. Bennett*, 2024-Ohio-4557, ¶ 59.  Other-acts evidence may also be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged."  *Bennett* at ¶ 59, citing *State v. Wilkinson,* 64 Ohio St.2d 308, 317 (1980), quoting *United States v. Turner*, 423 F.2d 481, 483-84 (C.A. 7, 1970).  Thus, the statements made at trial regarding the background of the argument and especially daughter's comments regarding being afraid of drug addicts in response to Douglas' threats was clearly offered for a proper purpose.  However, at least some of the other-acts evidence found on the bodycam video does not tend to show the complete picture of that day, such as the fact drug traffickers came to the driveway the day before, or the statement on the interview that Douglas smokes marijuana daily.

**{¶25}**  The third step requires us to determine whether the trial court abused its discretion in determining "whether the probative value of the other-acts evidence is substantially outweighed by the danger of unfair prejudice."  See Evid.R. 403.  Here, it does not appear from the record that the trial court specifically considered Evid.R. 403 at all, even when the defense clarified (without specifically citing the rule) that it was objecting not just based on relevance, but the fact the evidence was improper character evidence.  When weighing the probative value and the danger of unfair prejudice of other-acts evidence, the trial court's analysis should be "robust."  *State v. Hartman*, 2020-Ohio-4440, ¶ 29.  The trial court should look to the degree to which the fact is actually contested, and if not genuinely disputed or material to the case, then it has little probative value and the risk of prejudice is high.  *Id.* at ¶ 31.  Further, the trial court

should look to "whether the prosecution is able to present alternative evidence to prove the same fact through less prejudicial means and whether the other-acts evidence is probative of an essential element of the crime or an intermediate fact in the case." *Id.* at ¶ 32, citing 1 Imwinkelried, Giannelli, Gilligan, Lederer & Richter, *Courtroom Criminal Evidence*, § 908 (6th Ed. 2016).

**{¶26}** Again, the victims' testimony from the witness stand regarding the drug use was ample to show context and their state of mind. However, most of the other-acts drug evidence that came in the from the bodycam videos was more prejudicial than probative (e.g., wife's bodycam statement that "he does street drugs," "he smokes marijuana daily," there is "drug trafficking in and out of the driveway all the time," and daughter's bodycam statement that while her mother was at work the day before, Douglas had "drug people" come to the house).

**{¶27}** Additionally, the State had other evidence available to it to prove the elements of the offenses because many facets of Douglas' behavior that day showed the victims believed Douglas' threats were imminent: Douglas' use of profanity and tone of voice, his slamming down wife's work bag and scattering the contents, his stuffing her belongings in the garbage, his almost hitting daughter with the kennel door, his pulling out knives during the argument and at some point throwing them at the wall, and his punching a hole in the wall. This evidence of Douglas' behavior at the time of the threats showed that the State had other evidence at its disposal than the other-act drug evidence to demonstrate the victim's belief that Douglas would cause them imminent physical harm.

**{¶28}** Certainly, some references to the "drug use," were more probative than prejudicial. For example, daughter's response to Douglas that she was "afraid of drug addicts" around the time he uttered the threats cuts to the very heart of her belief that he would cause her imminent physical harm. Further, daughter's statements made in response to Douglas at the time of the threat was certainly "inextricably related" to the crime charged such that it played an integral part in explaining the sequence of events." *See State v. Henry*, 2006-Ohio-4783, ¶ 27 (10th Dist.). Still other statements, as the State argued, were offered to show the background of wife and Douglas' relationship, and why it deteriorated. Some of those statements were permissible. *See State v. Barnes,* 2019-Ohio-2634, ¶ 36 (3d Dist.) (where drug and alcohol character evidence was admissible in a menacing by stalking case to explain the deterioration of the relationship between the defendant and victim). On the other hand, some statements that were admitted, such as the evidence of drug use the prior day or drug dealers being around the residence some time prior does not meet the standard for admissibility. Those statements had virtually no probative value toward the incident at hand. *See State v. Gooding,* 2021-Ohio-173, ¶ 25 (5th Dist.) (where evidence of drug and alcohol use was not highly probative of whether defendant menaced victims because it did not tend to demonstrate any fact at issue in the case).

**{¶29}** Also concerning is the trial court did not specifically provide a limiting instruction regarding other acts. While it did provide an instruction regarding the hearsay component of the video, it did not provide a limiting instruction pursuant to the guidance set forth in *State v. Hartman*, 2020-Ohio-4440, ¶ 71. The jury instructions "should be tailored to better enable jurors to understand the prohibition on the use of

other-acts evidence to make inferences about the defendant's disposition to commit criminal acts." *Id.* However, Douglas did not object to the jury instructions nor proffer a specific instruction himself to the trial testimony as whole, though he did for the playing of the bodycam video as far as it pertained to hearsay. "Although a court must give a limiting instruction upon request, this 'does not mean the court should sua sponte issue such an instruction any time other-acts evidence is used.' " *Id.* at 67, *State v. Echols,* 2024-Ohio-5088, ¶ 47.

{¶30} Even if we were to find that it was error for the trial court to have admitted some of the evidence regarding drug use, we would find the error harmless. "An appellate court may not reverse a judgment due to the trial court's error in admitting evidence at trial if the error was harmless." *State v. Stevenson,* 2023-Ohio-4853, ¶ 82 (6th Dist.). Harmless error is " 'any error, defect, irregularity, or variance which does not affect substantial rights.' " *Stevenson* at ¶82, citing *State v. Kamer*, 2022-Ohio-2070 ¶ 154, (6th Dist.), quoting Crim.R. 52(B). "When determining whether a trial court's improper admission of other-acts evidence affected the substantial rights of a defendant, an appellate court must (1) determine whether the error prejudiced the defendant (i.e., the error affected the verdict), (2) declare a belief that the error was not harmless beyond a reasonable doubt, and (3) excise the improper evidence from the record, look to the remaining evidence, and determine whether there is evidence beyond a reasonable doubt of defendant's guilt." *Stevenson* at ¶ 83, quoting *Kamer* at ¶ 155, citing *State v. Harris*, 2015-Ohio-166, ¶ 37. "In other words, 'an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence.' " *Id.*, quoting *State v. Morris*, 2014-Ohio-5052, ¶ 33. " '[T]he

real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result." *State v. Elkins*, 2019-Ohio-2427, ¶ 24 (4th Dist.), citing *Morris* at ¶ 25.

**{¶31}** We find that although some of the other-acts evidence was inadmissible, it did not prejudice Douglas because of the overwhelming evidence of his guilt without the offending testimony. *See, e.g., State v. Gooding,* 2021-Ohio-173 (5th Dist.) (evidence of defendant's drug and alcohol use did not meet the standard of admissibility in menacing case was harmless when overwhelming evidence of the elements of the offense was presented). Even without the evidence regarding the drug use, the record contains overwhelming first-person accounts and physical evidence that Douglas threatened both his wife and daughter. *See State v. Sims*, 2023-Ohio-1179, ¶ 101 (4th Dist.) (where theft and identity-fraud offenses evidence was improperly admitted in rape case but record contained overwhelming evidence of rape). Here, although some of the statements regarding drug use were improperly admitted, the references were slight compared to the overwhelming admissible evidence of Douglas' guilt. Accordingly, we overrule Douglas' first assignment of error.

II. Second Assignment of Error - Admission of Hearsay Bodycam Evidence

**{¶32}** In his second assignment of error, Douglas contends that the trial court erred when it allowed unredacted bodycam videos of the victim's statements that constituted hearsay for which no proper exception exists. Douglas claims that the State's argument is misleading when it claims the statements were not offered for the truth, but to show the demeanor of the victims shortly after the incident. Douglas points out that the introduction of this evidence actually prejudiced him, either by itself, or

cumulatively, with the errors he asserts in the first assignment of error, because the bodycams contain damaging other-acts evidence.

{¶33}  The State avers that the bodycam videos of the victims are not hearsay because they were not offered for the truth of the matter asserted; but, rather, offered to show the victims' state of mind and demeanor immediately after Douglas threatened them.  The State argues that the trial court provided a limiting instruction, and that both victims also testified prior to their bodycam statements being played for the jury, so the jury heard first-person accounts from the witness stand.

## A.  Law

{¶34}   Generally, "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court."  *State v. Newcomb,* 2024-Ohio-805, ¶ 50 (4th Dist.), quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. We therefore "review a trial court's hearsay rulings for an abuse of discretion."  *Id.,* quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 97.  An "abuse of discretion" connotes more than a "mere error of law or judgment; it implies that a trial court's decision was unreasonable, arbitrary or unconscionable."  *Id.* quoting *State v. Martin*, 2017-Ohio-7556, ¶ 27, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶35}  " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement."  *State v. Bennett,* 2023-Ohio-2734, ¶ 25 (4th Dist.), Evid.R. 801(C).  Hearsay is comprised of two elements:  (1) there must be an out-of-court statement and (2) the statement must be offered to prove the truth of the matter asserted.  *State v. Hill,* 2018-Ohio-67, ¶ 24 (4th Dist.), citing *State v. Maurer*, 15 Ohio

St.3d 239, 262 (1984). Generally, hearsay is not admissible unless it falls within one of the recognized exceptions. *Id.,* citing *State v. Agosta*, 2012-Ohio-3225, ¶ 33 (5th Dist.), citing Evid.R. 802; and *State v. Steffen*, 31 Ohio St.3d 111, 119 (1987).

**{¶36}** "Out-of-court statements that would otherwise be inadmissible do not become admissible simply because they were captured on a police body camera." *State v. Wears,* 2023-Ohio-4363, ¶ 58 (3d Dist.), quoting *State v. Jones*, 2023-Ohio-380, ¶ 129 (8th Dist.). " 'The purpose of body cameras is to record events in which law enforcement officers are involved to improve officer safety, increase evidence quality, reduce civilian complaints and reduce agency liability . . . not to supplant the in-court testimony of witnesses.' " *Id.* quoting *Jones* at ¶ 129. Thus, generally, "statements recorded by police body cameras cannot be used either to supplement the testimony of a witness or as a substitute for the testimony of a witness." *Id.* citing *Jones* at ¶ 129.

### B. Analysis

**{¶37}** At the status conference, the defense objected to the State entering the law enforcement bodycam video interviews of both victims on the basis that the bodycam contained hearsay. The State responded that the statements on the videos fell under three exceptions: excited utterance (Evid.R. 803(2)), present sense impression (Evid.R. 803(1)); and recorded recollection (Evid.R. 803(5)). The trial court indicated it had reviewed the videos. After the defense responded that those three exceptions did not apply, the trial court asked the State how it intended to the use the videos. The State then explained that because it had to prove the element the victims believed the threat of physical harm was "imminent," playing the video statements was necessary to show the victims' demeanor moments after the incident occurred. The trial

court therefore ruled that, "[t]hat is not hearsay.  That is not being offered for the truth of

the matter stated.  [The State's] wanting to show their demeanor, [the prosecutor's]

entitled to do that."  The trial court further indicated it would provide a limiting instruction

to the jury, to be prepared by the defense.

**{¶38}**  The defense also argued that if the victims testified, and the bodycam

statements were identical to their testimony, then that would constitute cumulative

evidence (as defined in Evid.R. 403(B)).  However, the defense also clarified that if the

bodycam videos were admitted, then it would use the victims' bodycam statements for

impeachment purposes, i.e., to show inconsistencies in the victims' accounts.  The

defense underscored its objection to the bodycam video based on hearsay evidence,

and the trial court found it was admissible to show the victim's affect, and how they

interpreted the alleged threats.  At the conclusion of the evidence, the trial court

instructed the jury as to the bodycam videos as follows:

> In this case, you saw two videos.  One of [wife] and one of [daughter].  You
> are to consider these videos only for the state of mind of both [wife] and
> [daughter].  You may consider the videos with regards to the consistency of
> the testimony of the witnesses.  However, you are not to consider these
> statements as proof of the allegations in this case.

Neither party objected to this instruction.

**{¶39}**  It is true that "[w]hile hearsay may not be permitted, an out-of-court

statement is not hearsay and is admissible if it is offered for a different purpose."  *State*

*v. Bonner*, 2023-Ohio-4003, ¶ 57 (6th Dist.), citing *State v. Beasley*, 2018-Ohio-493,

¶ 169.  However, the bodycam interviews do not contain a few isolated remarks, but

instead, complete interviews such that it is impossible to watch them for the purpose for

which they were offered (*i.e.,* to determine the victims' state of mind or demeanor)

without considering them for the truth of the matter asserted.  Further, a review of the video does not show anything in the victims' demeanor except they were considerably matter-of-fact, thus, why the video probably would not have been admissible under an excited utterance exception.  Finally, because the bodycam statements contain the victims saying Douglas threatened them and they were afraid or believed that Douglas would follow through with his threats, it is hard to see how they were not being admitted for the truth of the matter asserted, because at least portions of the statements contain evidence highly relevant to proving the elements of the offense themselves (*e.g.,* that Douglas' threats and the victims' belief he would cause imminent physical harm to them).

{¶40}  Ultimately, however, the bodycam video evidence mostly echoed the victims' testimony at trial which was already properly admitted and subject to cross-examination.  Further, a limiting jury instruction was provided to instruct the jury regarding the purpose for which they were to consider the video evidence itself.  Additionally, there was other evidence to corroborate the victims' testimony, including photographic evidence of a hole in the wall and knives present in the home.  Further, the statements Douglas made to Deputy Preston that someone "held him down" and hit him, as well as his own testimony during trial was simply not credible.  There is no reasonable possibility that the video contributed to the conviction and thus any error in its introduction was harmless.  Both victims' testimony at trial was essentially the same as they answered Deputy Preston's questions during the bodycam interviews.  *See, e.g., State v. Pouge,* 2024-Ohio-4578 (8th Dist.) (where Eighth District found harmless error when the victim testified at trial essentially the same as in the bodycam video

interview that was also admitted at trial).  Therefore, we find although it was error to play before the jury and admit the bodycam videos, such error was harmless due to the substantial other evidence in the record of Douglas' guilt.  Thus, we overrule Douglas' second assignment of error.

{¶41}  In sum, while the trial court improperly admitted some other-acts evidence at the trial, some other-acts evidence was properly admitted to show both a background of the incident, and the victims' subjective belief that Douglas would cause them imminent physical harm.  Any error resulting from the improperly admitted other-acts evidence was harmless, due to the overwhelming evidence of Douglas' guilt.  Further, any error resulting from the admission of the hearsay bodycam videos was also harmless because the victims' testimony at trial was nearly identical to their statements that appeared on the bodycam video.  The overwhelming evidence points to Douglas' guilt.  We therefore find both assignments of error to be without merit and affirm the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the ATHENS COUNTY MUNICIPAL COURT to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.

For the Court,

BY: _____
Kristy S. Wilkin, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**